**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bianka Yurelis Sequeira,<br>Petitioner,<br>v.<br>Unknown Party, *et al.*,<br>Respondents. | No. CV-26-02697-PHX-JJT<br>**ORDER** |

Before the Court is the Report and Recommendation (Doc. 19, "R&R") entered by United States Magistrate Judge Camille D. Bibles recommending that the Court grant the Petition for habeas corpus pursuant to 28 U.S.C. §2241 (Doc. 1.)

Petitioner is a citizen of Nicaragua who was paroled into the United States at the George Bush Continental Airport port of entry on June 17, 2024 pursuant to 8 U.S.C. § 1254a, which provided DHS authorization to grant humanitarian parole to Nicaraguan nationals under "TPS" or Temporary Protected Status. (Doc. 16.) That parole was set to expire on June 12, 2025. Petitioner remained in the United States after the expiration of her parole up to and through her arrest by Border Patrol at a checkpoint near Palo Verde California on March 18, 2026. She has since been detained in ICE custody in the District of Arizona, for a period now exceeding six months. Before her detention Petitioner had obtained DHS authorization to work in the United States, as well as a social security number.

. . .

On the day of her arrest, Petitioner was served with a Warrant of Arrest and Notice to Appear and placed in removal proceedings. During her detention her charge was amended to indicate she was charged with being removable pursuant to 8 U.S.C. § 1182(a)(7)(A)(i) as a person who at the time of application for admission was not in possession of a valid entry document. (Doc. 16-1 at 18.)

On May 22, 2026, while in custody, Petitioner filed an application for asylum stating she had a fear of being returned to Nicaragua because of her and her family's political affiliation. Removal proceedings, to include hearing on Petitioner's asylum application, continued during her detention and on August 4, 2026, an Immigration Judge at the Eloy Immigration Court found her removable and denied her application for asylum and for withholding of removal under both CAT and INA Section 241(b)(3). (Doc. 20-1.) The IJ ordered her removed to Nicaragua. Petitioner initially indicated she waived appeal of the IJ's determinations (Doc. 20-1) but quickly thereafter filed a notice of appeal with BIA, which issued a notice of receipt on August 17, 2026. (Doc. 23.) Petitioner's appeal is thus pending and consequently her removal proceedings are not final at this time.

On April 17, 2026, she filed the instant habeas petition seeking release from custody. (Doc. 1.) That petition was premised first on Petitioner's assertion that she was subjected to prolonged detention in violation of her Constitutional right to due process; second on her assertion that she was detained pursuant to 8 U.S.C. § 1226, which requires a bond hearing; and third on her assertion of a violation of the Administrative Procedure Act due to arbitrary detention because she entered the United States lawfully and has followed all immigration process required of her. Petitioner argues as a result of these constitutional and statutory violations she is entitled to release, or at least a bond hearing.

Respondents filed a Response outlining that when Petitioner presented herself for inspection at the port of entry, CBP officials inspected her and determined "she was inadmissible because she did not have valid entry documents," but they granted her humanitarian parole which expired approximately a year later on June 12, 2025. (Doc. 7 at 2.) By granting an otherwise inadmissible alien temporary parole into the United states for

"urgent humanitarian reasons," Respondents assert, DHS does not convert that otherwise inadmissible alien to an admitted status; rather, if the DHS Secretary revokes parole or it expires, "the alien shall forthwith return to or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." (Doc. 7 at 2 (quoting 8 U.S.C. § 1182(d)(5)).) Thus, Respondents argue, upon expiration of her parole, Petitioner's status reverted to an arriving alien subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). (Doc. 7 at 2.) In that status, Respondents argue, Petitioner must be detained for the pendency of her removal proceedings pursuant to that provision. As a result, the Court reads the Response to argue that each of Petitioner's proffered bases for release or a bond hearing are defeated as 1) the mandatory detention provision of Section 1225(b)(2)(A) recognizes no claim for prolonged detention and there is no constitutional due process right otherwise; 2) Petitioner was not detained pursuant to Section 1226 which therefore eliminates the possibility of a discretionary bond hearing; and 3) her detention is not arbitrary but rather required pursuant Section 1225(b)(2).

Over the past 15 months, federal courts in this circuit and others have repeatedly been asked to address the question of whether persons present in the United States have a Due Process right to a release hearing under the Constitution regardless of admission status. Because the Ninth Circuit had not definitively spoken on this question in many circumstances, the trial courts did their best to predict the answer. Many district courts in this circuit, through their own reasoning and at times finding out-of-circuit orders persuasive on the point, concluded that such a constitutional right to due process exists for many classifications of inadmissible aliens present in the United States. The R&R collects pages worth of such recent district court rulings within and without the Ninth Circuit so finding. (R&R at 10-14.) Based on the persuasive value of those cases, the R&R recommended this Court find that, at least in the circumstance of an alien paroled into the United States on TPS status and having committed no crime nor violated the terms of their parole, such a person has "a liberty interest in their continued release, entitling them to

certain due process protections, the extent of which are determined by applying the test provided in *Matthews v Eldridge*, 424 U.S. 319, 335 (1976)." (R&R at 12.) And indeed, the undersigned has ruled consistent with that conclusion in at least two other recent immigration-related habeas matters presenting similar issues. *See, Osmonaliev v. Cantu*, No. CV-25-03531-PHX-JJT, (D. Ariz. Dec. 16, 2025); *F.B. v. Noem*, No. CV-25-04271-PHX-JJT (JZB), 2025 WL 3628652, at *1 (D. Ariz. Dec. 4, 2025).

But after Judge Bibles issued her R&R in this matter, the Ninth Circuit issued its opinion in *Padilla v. United States Immigration and Customs Enforcement et al*., No. 24-2801, ___ F.4th ___, 2026 WL 2822044 (9th Cir., September 21, 2026),[1] which speaks directly to the issue Petitioner's case presents. Although the question before the Ninth Circuit in *Padilla* was broader than the one Petitioner presents here, its holding necessarily encompasses the resolution of the instant Petition. In *Padilla*, the circuit court addressed on interlocutory appeal whether a class of asylum seekers who were all initially screened for expedited removal upon apprehension were subject to mandatory detention under Section 1225(b) with no opportunity for bond hearings, or whether they possessed a Fifth Amendment Due Process right to such hearing. The Court held that

> *except for the extremely narrow category of people covered by the entry fiction*, every person in the United States is entitled to the Fifth Amendment's guarantee of due process, regardless of their citizenship or legal status.

*Padilla*, 2026 WL 2822044 at *37-38 (emphasis added). The holding in *Padilla* meant that a very large number of persons "not legally admitted" to the United States, to include those who were not apprehended at "the threshold of entry," were recognized as possessing Due Process rights under the Constitution. *Id*. But the holding also necessarily defined those apprehended on the threshold of entry—that "extremely narrow category of people covered by the entry fiction":

[1] The Court notes the mandate has not yet issued for this advance opinion, which thus lacks precedential value at present. The court nonetheless finds the panel's reasoning highly persuasive as to the instant issue.

> Today, the entry fiction encompasses those apprehended at or very near a point of entry *and then* either *paroled into the United States* or detained in the United States *pending a determination of their admissibility*. Such individuals are "treated as if stopped at the border" with respect to certain legal rights. . . . Because such individuals remain "on the threshold of initial entry" despite their physical presence in the United States, *their due process rights regarding admission are limited to "whatever the procedure authorized by Congress is."*

Id. at *31 (*quoting Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953) (emphasis added)). To the undersigned it is inescapable that that extremely narrow category of people covered by the entry fiction, and thus outside of the Constitutional Due Process protection, includes those "paroled into the United States pending a determination of their admissibility"—persons such as Petitioner. Petitioner presented at the port of entry, was apprehended and then paroled on June 17, 2024, with a parole expiration date of June 12, 2025. Upon expiration of parole, her status "returned to the custody from which he was paroled"—that of an arriving alien subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). Petitioner thus may be detained pending resolution of her removal proceedings. The Court must deny the Petition.

**IT IS THEREFORE ORDERED** rejecting the R&R in this matter (Doc. 19) in light of the Ninth Circuit's issuance of *Padilla*.

**IT IS FURTHER ORDERED** denying the Petition for habeas corpus pursuant to 28 U.S.C. §2241 (Doc. 1).

**IT IS FURTHER ORDERED** dissolving as now mooted the Court's Previous TRO (Doc. 18) prohibiting removal of Petitioner until the Court could determine status of her removal proceedings, as those proceedings have now been shown to be ongoing and not final.

. . .

. . .

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Respondents and close this case.

Dated this 5th day of October, 2026.

Honorable John J. Tuchi
United States District Judge